FILED IN CLERK'S OFFICE
U.S.D.C. Rome

AUG 2 2 2007

JAMES N. HATTEN, Clerk
By _____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

| | |
|---|---|
| JAMIE ELLIS as next friend of minor child; JENNIFER LARIOS as next friend of minor child; SHAMEEKIA JOHNSON as next friend of minor child; STEFFANY STONE as next friend of minor child; NATASHA DONALDSON as next friend of minor child; DOROTHY CHAPMAN as next friend of minor child; JESSICA ERIN BOGUE as next friend of minor child; JENNY TILLMAN as next friend of minor child; SUSAN SANDFORD as next friend of minor child; CINDY WEST as next friend of minor child; LIZ STRONGMAN as next friend of minor child, MIA C. MCFADDEN-LOCKETT as next friend of minor child; CARL ALONZO WEAKS as next friend of minor child; on behalf of themselves and all those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> RHONDA MEDOWS, in her official capacity as Commissioner of the Georgia Department of Community Health; WELLCARE OF GEORGIA INC., a Georgia corporation; PEACH STATE HEALTH PLAN INC., a Georgia corporation; AVESIS THIRD PARTY ADMINISTRATORS INC., a | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) x <br><br> CIVIL ACTION <br><br> FILE NO. _____ <br> **4:07-CV- 167** <br><br> **COMPLAINT – CLASS ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Georgia corporation; and DORAL
DENTAL SERVICES OF GEORGIA
LLC, a Georgia limited liability
company,

           Defendants.

---

## I. PRELIMINARY STATEMENT

1.     This class action is brought to vindicate the rights of over 100,000 of Georgia's neediest children to access to adequate dental care.  Absent action by this Court, the rights and entitlements of these children to dental care will be jeopardized or foreclosed, endangering their health and violating their Constitutional rights.

2.     The children whose care is in jeopardy have been receiving adequate dental care through Georgia's Medicaid and PeachCare for Kids ("PeachCare") (www.peachcare.org) programs as required by federal law.  Their access to such care, however, has been jeopardized by what the Chairman of one of the Defendants characterized to Wall Street analysts as "the first phase of our efforts to control Georgia's excessive dental spending."  Simply put, the Defendants reacted to the fact that many of Georgia's neediest children are availing themselves of the quality dental care to which they are entitled as a matter of law

not as a positive event but as a financial problem for them and their investors. To remedy the "problem" Defendants unlawfully interfered with their patients' federally guaranteed access to dental care through Medicaid by unlawfully canceling service provider contracts thereby violating the Constitution of Georgia and the United States, as well as state and federal statutory law as outlined below.

3.    The Defendants' interference with the class members' ability to obtain dental care involved decisions by two of Georgia's three Medicaid managed care organizations – WellCare and Peach State - to terminate their service contracts with the two largest and most successful organizations providing dental care to Georgia's underserved, low-income pediatric Medicaid and PeachCare patients. Absent intervention by this Court, the contract terminations will take effect on August 25, 2007 and August 31, 2007. Given the large volume of patients that are served by these two organizations, it is estimated that well over 50,000 low-income children will be unable to obtain access to the dental care to which they are legally entitled.

4.    As set forth below, WellCare's and Peach State's decisions to terminate the contracts with the two largest organizations that are dedicated to providing dental services to Medicaid-eligible children - Kool Smiles P.C. ("Kool Smiles") and Help A Child Smile – along with Defendant Medows' approval of

these actions, constitute a violation of the express requirements of federal Medicaid law.

5.    The basis for Defendants' decisions were purely economic: fewer Medicaid-funded providers of dental services to children leads to fewer dental services being provided to children and increased profits to the managed care organizations. This is particularly egregious where, as here, the closed network system at issue lacks sufficient excess capacity of dentists willing and able to absorb the large volume of patients of the terminated providers.

6.    If allowed to proceed, Defendants' termination of their service provider contracts with Kool Smiles and Help A Child Smile will cause violations of various federal and state rights of Medicaid and PeachCare-eligible children, including the right to adequate, timely dental care and breach of Georgia's contract with the Federal Government and DHS's contracts with WellCare and Peach State to which the Plaintiffs are third-party beneficiaries. Defendants' actions also will cause irreparable harm to members of the Class, who, absent relief from this Court, will be foreclosed from access to any form of dental care or face substantial hardship in obtaining access to dental care in contravention of their legal rights and entitlements. Plaintiffs seek declaratory and injunctive relief to redress these violations of their federal rights.

- 4 -

## II.  JURISDICTION

7.      Plaintiffs seek declaratory and injunctive relief to redress the deprivation of rights secured to them under Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, which is enforceable under 42 U.S.C. § 1983.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), 2201 (declaratory judgment), and 2202 (other relief).

## III.  NAMED PLAINTIFFS

8.      Plaintiff Jamie Ellis is the parent of a minor child eligible for pediatric dental care under the Medicaid Act and PeachCare Health Plan. Defendants' violations of Jamie's minor child's rights and resulting injuries are set forth below.

9.      Plaintiff Jennifer Larios is the parent of a minor child eligible for pediatric dental care under the Medicaid Act and PeachCare Health Plan. Defendants' violations of Jennifer's minor child's rights and resulting injuries are set forth below.

10.     Plaintiff Shameekia Johnson is the parent of a minor child eligible for pediatric dental care under the Medicaid Act and PeachCare Health Plan.

Defendants' violations of Shameekia's minor child's rights and resulting injuries are set forth below.

11. Plaintiff Steffany Stone is the parent of a minor child eligible for pediatric dental care under the Medicaid Act and PeachCare Health Plan. Defendants' violations of Steffany's minor child's rights and resulting injuries are set forth below.

12. Plaintiff Natasha Donaldson is the parent of a minor child eligible for pediatric dental care under the Medicaid Act and PeachCare Health Plan. Defendants' violations of Natasha's minor child's rights and resulting injuries are set forth below.

13. Plaintiff Dorothy Chapman is the parent of a minor child eligible for pediatric dental care under the Medicaid Act and PeachCare Health Plan. Defendants' violations of Dorothy's minor child's rights and resulting injuries are set forth below.

14. Plaintiff Jessica Erin Bogue is the parent of a minor child eligible for pediatric dental care under the Medicaid Act and PeachCare Health Plan. Defendants' violations of Jessica's minor child's rights and resulting injuries are set forth below.

**15.** Plaintiff Jenny Tillman is the parent of a minor child eligible for pediatric dental care under the Medicaid Act and PeachCare Health Plan. Defendants' violations of Jenny's minor child's rights and resulting injuries are set forth below.

**16.** Plaintiff Susan Sandford is the parent of a minor child eligible for pediatric dental care under the Medicaid Act and PeachCare Health Plan. Defendants' violations of Susan's minor child's rights and resulting injuries are set forth below.

**17.** Plaintiff Cindy West is the parent of a minor child eligible for pediatric dental care under the Medicaid Act and PeachCare Health Plan. Defendants' violations of Cindy's minor child's rights and resulting injuries are set forth below.

**18.** Plaintiff Liz Strongman is the parent of a minor child eligible for pediatric dental care under the Medicaid Act and PeachCare Health Plan. Defendants' violations of Liz's minor child's rights and resulting injuries are set forth below.

**19.** Plaintiff Mia C. McFadden-Lockett is the parent of a minor child eligible for pediatric dental care under the Medicaid Act and PeachCare Health

Plan.  Defendants' violations of Mia's minor child's rights and resulting injuries are set forth below.

   **20.**   Plaintiff Carl Alonzo Weaks is the parent of a minor child eligible for pediatric dental care under the Medicaid Act and PeachCare Health Plan. Defendants' violations of Carl's minor child's rights and resulting injuries are set forth below.

## IV. DEFENDANTS

   **21.**   Defendant Medows is the Commissioner of the Georgia Department of Community Health ("DCH").  In that capacity, Defendant Medows is the state official ultimately responsible for overseeing the policies and conduct of Georgia Medicaid programs, and for ensuring that such programs comply with federal law. Defendant Medows may be served at the Department of Community Health, 2 Peachtree Street, Atlanta, Georgia 30303.

   **22.**   Defendant WellCare is a care management organization ("CMO") that provides managed care to Georgia recipients of Medicaid, pursuant to a contract with DCH.  Defendant WellCare may be served via its registered agent for service of process, Corporation Service Company, at 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

23.    Defendant Peach State is a CMO that provides managed care to Georgia recipients of Medicaid, pursuant to a contract with DCH.  Defendant Peach State may be served via its registered agent for service of process, Martin M. Wilson, Esq., at Troutman Sanders LLP, 600 Peachtree Street NE, Suite 5200, Atlanta, Georgia 30082-5192.

24.    Defendant Avesis is a third-party administrator that contracts with dentists and clinics to provide dental care to Georgia recipients of Medicaid, pursuant to a contract with Defendant Peach State.  Defendant Avesis may be served via its registered agent for service of process, CT Corporation System, at 1201 Peachtree Street NE, Atlanta, Georgia 30361.

25.    Defendant Doral is a national dental benefits management company that contracts with dentists and clinics to provide dental care to Georgia recipients of Medicaid, pursuant to a contract with Defendant WellCare.  Defendant Doral may be served via its registered agent for service of process, Corporation Service Company, at 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

## IV. FACUAL ALLEGATIONS

### A.    Federal Statutory Scheme

26.    In 1965, Congress enacted Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, establishing Medicaid, a medical assistance program

cooperatively funded by the federal and state governments. Medicaid is designed to ensure that low-income people receive necessary medical services. If a state elects to participate in Medicaid, and thereby to receive federal matching funds to partially cover the cost of Medicaid benefits, the state must create plans that adhere to minimum federal legal requirements, as provided by the Medicaid Act and its implementing rules and regulations.

27.     The Centers for Medicare and Medicaid Services ("CMS"), successor to the Health Care Financing Administration ("HCFA"), is the federal agency that publishes rules and guidelines for implementation of the Medicaid program (www.cms.hhs.gov). These rules and regulations are set forth at 42 C.F.R. Part 405, and in the HCFA/CMS State Medicaid Manual.   These regulations are binding on all participating states.

28.     A state's participation in Medicaid is voluntary.   If it chooses to participate, however, the state must adopt a plan which is consonant with the requirements of the Medicaid Act. The provisions of the state's plan then become mandatory upon all political subdivisions of that state. 42 U.S.C. § 1396a(a)(1) *et seq.* These state plans are contracts into which the state enters for the express benefit of qualifying citizens, who are the third-party beneficiaries of these contracts.

**29.** The Social Security Act and regulations further require that the participating state must operate a Medicaid program in accordance with, among others, the following pertinent provisions under 42 U.S.C. § 1396

(a)     1396a(a)(8) - that provides that Medicaid-covered services shall be delivered with reasonable promptness;

(b)     1396a(a)(10)(B) - that provides that services delivered to Medicaid recipients shall not be less in amount, duration and scope than those available to other similarly eligible recipients;

(c)     1396a(a)(23) - that provides that Medicaid recipients shall have free choice of providers;

(d)     1396n(b) - that allows a state to obtain a waiver of the free-choice provisions of § 1396a(a)(23) and implement a primary care case-management system "if such restriction does not substantially impair access to … services of adequate quality where medically necessary";

(e)     1396u-2(a)(1) - that allows a state to restrict the number of provider agreements with managed care entities "if such restriction does not substantially impair access to services"; and

(f)     1396a(a)(30) - that provides, in pertinent part, that the State must maintain a sufficient number of providers so that Medicaid beneficiaries will

have access to care and services available under the plan at least to the extent that such care and services arc available to the general population in the geographic area.

30.    In addition, the Medicaid statute, at 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(43), 1396d(a)(4)(B) and 1396d(r), requires special outreach to, and screening and treatment of, children under the age of 21, with respect to certain medical services, including dental services.  These statutory sections are known collectively as the Early and Periodic Screening, Diagnosis and Treatment ("EPSDT") program.

(a)    42 U.S.C. §§ 1396a(a)(10)(A) and 1396d(a)(4)(B) create the EPSDT program.  In particular, section (a)(10) mandates that: "a state plan for medical assistance must...provide for making medical assistance available [to eligible persons],including at least the care and services listed in paragraphs (1) through (5)...of section 1396d(a) of this title." In turn, 42 U.S.C. § 1396d(a)(4)(B) says that "medical assistance means...early and periodic screening, diagnostic, and treatment services (as defined in subsection (r) of this section) for individuals who are eligible under the plan and are under the age of 21." 42 U.S.C. § 1396d(r) describes the services which are to be offered under that program, including dental screenings and

other services provided at "intervals to meet reasonable standards for dental practice," which "at a minimum include relief of pain and infections, restoration of teeth, and maintenance of dental health."

(b)     42 U.S.C. § 1396a(a)(43) provides for outreach to, and screening, diagnosis, and treatment of, persons under the age of 21 who are eligible for medical assistance, including services which may be required to facilitate achieving these results.

(c)     42 C.F.R. § 441.56 (b)(vi) requires dental screening services furnished by direct referral to a dentist for children beginning at 3 years of age, and 42 C.F.R. § 441.56(c)(2) requires both diagnosis and treatment for "dental care, at as early an age as necessary, needed for relief of pain, and infections, restoration of teeth and maintenance of dental health."

(d)     42 C.F.R.§ 441.56(e) provides that the state Medicaid agency must adopt standards for the timely provision of EPSDT services which meet reasonable standards of medical and dental practice, as determined by the agency after consultation with recognized medical and dental organizations involved in child health care, and must employ processes to ensure timely initiation of treatment, if required, generally within an outer limit of 6 months after the request for screening services.

(e)     42 C.F.R.§ 441.56(e) requires the state Medicaid agency to "make available a variety of individual and group providers qualified and willing to provide EPSDT services."

31.     The foregoing federal Medicaid laws are designed to compel states that choose to opt into the Medicaid dental program to implement programs that actually make dental services available to Medicaid recipients.    Federal law therefore contemplates the use of economic incentives and other state initiatives to accomplish provider acceptance of Medicaid patients. Provider participation policies, the level of fees, and the administrative mechanisms through which providers are paid are critical to achieving the Congressional mandate of providing access to dental care for low-income patients.

32.     Georgia has chosen to participate in Medicaid and has elected to provide dental care for all children enrolled in the State's PeachCare program.  As such it is required to follow and implement the mandates of the federal law.

**B.     Medicaid Structure in Georgia**

33.     DCH currently provides Medicaid coverage to Georgia patients in part through contracts with three care CMOs:  AMGP Georgia Managed Care Company Inc. d/b/a Amerigroup Georgia ("Amerigroup") and Defendants

WellCare and Peach State.  These CMOs are assigned various regions in Georgia as depicted in a true and accurate copy of the region map attached as **Exhibit "A"**.

34.     Upon information and belief, in late 2005 or early 2006, DCH initiated a request for proposal ("RFP") process to select entities to serve as CMOs.

35.     During the RFP process, DCH provided candidates with, and candidates submitted their bids based on, demographic data relating to the state's Medicaid population and Medicaid utilization rates from 2002.

36.     Upon information and belief, in mid-2006, as a result of the RFP process, Amerigroup, WellCare, and Peach State were selected from approximately a dozen candidates to be the state's Medicaid CMOs.

37.     A true and accurate copy of the Contract between The Georgia Department of Community Health and Peach State for the Provision of Services to Georgia Healthy Families is attached hereto as **Exhibit "B"** and incorporated herein by reference.

38.     A true and accurate copy of the Contract between Doral Dental Services of Georgia, LLC and Kool Smiles is attached hereto as **Exhibit "C"** and incorporated herein by reference.

39.     Effective July 18, 2005, DCH signed identical contracts (Contract Nos. 0653 attached as Exhibit "B" and 0654 attached as Exhibit "C") with Peach State and WellCare.   These contracts state in relevant part:

(a)     Section 2.2.1 requires DCH to monitor Peach State and WellCare's compliance with all applicable State and federal laws and regulations.

(b)     Section 4.1.1.1 requires that DCH be responsible for Enrollment, Disenrollment, education and outreach activities.

(c)     Section 4.8.17.2 requires that Peach State and WellCare implement procedures to address changes in the network providers that will not negatively affect the ability of Plaintiff Class Members to access dental services.

(d)     Section 4.3.4.1.8 requires Peach State and WellCare to comply with federal regulations codified at 42 C.F.R. §§ 438.206 through 438.210.

(i)     42 C.F.R. § 438.207(a) requires Peach State and WellCare to certify, and DCH to ensure, that Peach State and WellCare have "the capacity to serve the expected enrollment

in [their] service area[s] in accordance with the State's standards for access to care[.]"

(ii)   42 C.F.R. § 438.207(b)(1) requires Peach State and WellCare to certify, and DCH to ensure, that Peach State and WellCare offer "an appropriate range of preventative, primary care, and specialty services that is adequate for the anticipated number of enrollees for the service area."

(iii)   42 C.F.R. § 438.207(b)(2) requires Peach State and WellCare to certify, and DCH to ensure, that Peach State and WellCare "[m]aintain[] a network of providers that is sufficient in number, mix, and geographic distribution to meet the needs of the anticipated number of enrollees in the service area."

(iv)   42 C.F.R. § 438.210(a)(3)(i) requires the contracts between DCH and its CMOs to "ensure that the services are sufficient in amount, duration, or scope to reasonably be expected to achieve the purpose for which the services are furnished."

(v)   42 C.F.R. § 438.210(a)(3)(iii)(B) allows a CMO like Peach State and WellCare to "place appropriate limits on a

service...[f]or the purpose of utilization control, provided the services furnished can reasonably be expected to achieve their purpose, as required in paragraph (a)(3)(i) of this section[.]"

(e)     Section 4.8.1.2 of the DCH contracts requires Peach State and WellCare to "ensure that [their] network of Providers is adequate to assure access to all Covered Services[.]"

(f)     Section 4.8.1.5 of the DCH contracts requires Peach State and WellCare to adopt, and DCH to approve, polices for the selection and retention of providers that "shall consider the following":

(i)     "The anticipated GHF [Georgia Healthy Families program] [*i.e.*, Medicaid] Enrollment;"

(ii)    "The expected Utilization of services, taking into consideration the characteristics and Health Care needs of [the CMOs'] Members;"

(iii)   "The numbers and types (in terms of training, experience and specialization) of Providers required to furnish the Covered Services;"

(iv)    "The number of GHF network Providers who are not accepting new GHF patients, and"

(v)    "The geographic location of Providers and Members, considering distance, travel time, the means of transportation ordinarily used by Members, and whether the location provides physical access for Members with disabilities."

(g)    Section 4.8.13.3 of the DCH contracts require Peach State and WellCare to maintain a network of providers sufficient to ensure that patients do not wait longer than 30 days to obtain a dental appointment.

(h)    Section 4.8.17.2 of the DCH contracts require Peach State and WellCare to "have procedures in place to address changes in the health plan Provider network[s] that negatively affect the ability of Members to access services, including access to a culturally diverse Provider network.  Significant changes in network composition that negatively impact Member access to services may be grounds for Contract termination or State determined remedies."

(i)    Section 4.18.6.2.1 of the DCH contracts requires Peach State and WellCare to submit to DCH "a Provider Network Adequacy and Capacity Report that demonstrates that [Peach State and WellCare] offer[s] an appropriate range of preventative, Primary Care and

specialty services that is adequate for the anticipated number of Members for the service area and that [Peach State's and WellCare's] network[s] of providers [are] sufficient in number, mix and geographic distribution to meet the needs of the anticipated number of Members in the service area." Such reports are due to the DCH at various times, including quarterly, upon request, or "[a]ny time there has been a significant change in the [CMO's] operations that would affect adequate capacity and services. A significant change is defined as any of the following: ... A loss of Providers in a specific specialty where another Provider in that specialty is not available within sixty (60) miles ... or other adverse changes to the composition of the network which impair or deny the Members' adequate access to CMO plan Providers."

40.    Plaintiffs are intended third-party beneficiaries of these contractual provisions.

41.    To provide dental care to their patients, Defendants WellCare and Peach State each contracted with third-party administrators, Defendants Avesis and Doral.

42.    Defendants Avesis and Doral then each contracted with actual dentists, clinics, and dental groups to provide Georgia's low-income children with dental care.

43.    Upon information and belief, Medicaid utilization increased significantly from 2002 to 2006, and actual utilization was greater than what was anticipated from the data provided to candidates in the RFP process.

44.    Because of this increase in utilization, Amerigroup, WellCare, and Peach State were faced with greater Medicaid plan costs and a corresponding decrease in anticipated profits than each Defendant had anticipated during the RFP process.

C.    **Termination of Service Providers**

45.    In Georgia, two dental groups provide care for over 35% of Georgia's Medicaid-dependent children – Kool Smiles and Help A Child Smile. Kool Smiles serves an estimated 93,000 Georgia children through ten offices located in underserved areas of Atlanta and in some of the State's poorest cities and rural areas. Approximately 73,000 of those patients are in the Peach State and WellCare networks. Help A Child Smile serves an estimated 40,000 Georgia children via 12 mobile clinics that treat children in 77 school districts throughout

the State. Nearly 41,000 of these children are patients in the Peach State and WellCare networks.

46. The stated mission of Kool Smiles is "[t]o expand access to high quality oral health care for underserved communities." To that end, Kool Smiles provides general dental care to underserved children and young adults ages 1-21 who are covered by Medicaid or PeachCare, Georgia's health insurance program for low-income children.

47. To better meet the specialized needs of their low-income, pediatric clients, Kool Smiles has English- and Spanish-speaking patient services representatives and offers free translator services for any additional languages spoken by its patients. In addition, Kool Smiles clinics are designed to be child- and parent-friendly. Its facilities have oversized, child-themed waiting rooms, with children's play areas and activity centers; seating, reading materials, and access to local phone service for parents; and staff that is experienced with, and dedicated to, providing pediatric dental services.

48. The stated mission of Help A Child Smile is "[t]o provide comprehensive oral health care to Georgia's children, especially those who otherwise would not have the opportunity to visit a dentist." It provides comprehensive dental services to children, many of whom are Medicaid

participants, utilizing a fleet of state-of-the-art mobile dental offices equipped with the latest in dental care technology.

**49.** Because of the accepting atmosphere, accessibility, accommodations for pediatric needs and the capacity of Kool Smiles and Help A Child Smile clinics, children and parents enjoyed their visits and felt encouraged to visit these clinics for regular dental services. As such, these clinics became quite popular among the pediatric Medicaid dental population, and utilization of their services – and, hence, utilization of Georgia's dental Medicaid program – increased.

### *Terminatation of Kool Smiles and Help A Child Smile*

**50.** Georgia's Medicaid program compensates CMOs for their services (providing dental services through participating dentists and clinics) on a fixed fee per member, per month basis. The CMOs, in turn, pay for dental care based on the particular services provided to patients. Because of the popularity of Kool Smiles and Help A Child Smile and the increased level of dental care actually being provided to Georgia's neediest children, the CMOs' costs increased, while their remuneration from the State of Georgia did not. Therefore, the fact that Kool Smiles and Help A Child Smile were fulfilling Georgia's legal obligations to provide dental care represented a financial problem for the CMOs and the third-party administrators who administer the dental program on the CMOs' behalf.

51.     To reverse this trend of increasing utilization of the Medicaid dental program, and the associated expense of providing mandated care to the children being served by Kool Smiles and Help A Child Smile, and to reverse the decrease in expected profits, WellCare and Peach State, along with their third-party administrators, Doral and Avesis, decided to terminate their contracts with Kool Smiles and Help A Child Smile.

52.     Defendant Avesis on or about June 29, 2007, and Defendant Doral on or about July 25, 2007 each gave notice of their intent to terminate without cause their contracts with Kool Smiles and Help A Child Smile. A true and accurate copy of letters sent to Kool Smiles are attached as **Exhibits "D" and "E"** respectively.

53.     These notices were timed to cause the nearly simultaneous termination of Kool Smiles and Help A Child Smile by the end of August 2007. Doral's notices of termination claim to be effective as of August 25, 2007, and Avesis's notices claim to be effective as of August 31, 2007.

Upon information and belief, the termination notices to Kool Smiles and Help A Child Smile were nearly identical.

### *Termination During Enrollment Period*

**54.** When individuals enroll in Medicaid, they must select a CMO. With the exception of an initial 90-day period, individuals may change from one CMO to another only once a year.

**55.** Georgia Healthy Families, the program through which Georgia Medicaid services are provided, began operating on June 1, 2006 for individuals living in the Atlanta and Central regions of the state, and many individuals enrolled in the program on or near that date. Therefore, such individuals had the once-a-year opportunity to change to a different CMO as of approximately June 1, 2007, and they were to submit notice of their decision to change CMOs between June 1 and June 30, 2007.

**56.** Because Avesis and Doral did not provide notice of their intended terminations of Kool Smiles and Help A Child Smile until late June and July 2007, individuals enrolled with Peach State and WellCare did not have notice that their access to those clinics would be terminated during the time when they had the opportunity to switch to Amerigroup, the only CMO which has not attempted to terminate Kool Smiles and Help A Child Smile from its network.

**57.** Upon information and belief, WellCare and Peach State, together with Doral and Avesis, decided to terminate Kool Smiles and Help A Child Smile

as of late August, 2007, with notices issuing in late June and July, 2007, so that patients enrolled in WellCare or Peach State would be forced to remain with their CMO for another year.

**58.**     Upon information and belief, in parts of the state where Amerigroup does not operate, WellCare and Peach State undertook the efforts jointly so that Plaintiffs' access to an alternative provider who would enable them to obtain care through either Kool Smiles or Help A Child Smile would be completely foreclosed.

### *Impact of Terminations on Low-Income Children*

**59.**     Upon information and belief, Defendants' decision to terminate, simultaneously and without cause, the services of the two largest providers of dental care to Georgia's Medicaid-dependent children was intentionally made so as to make it more difficult or impossible for needy children to find convenient dental care, to deprive low-income children of their statutory entitlement to such care, and to thereby reduce Defendants' costs and increase their profits. Defendants have publicly stated that the terminations would reduce costs. Such cost reduction, however, can only be accomplished by reducing the amount of dental care provided and unlawfully depriving Plaintiffs of access to services to which they are legally entitled.

**60.**     Upon information and belief, terminating Kool Smiles and Help A Child Smile will sever the relationship between 100,000 Georgia children and their dentists and will force these children and their parents to seek new providers of dental care.

**61.**     Upon information and belief, this upheaval will put enormous strain on the State's Medicaid system.  Less than 1,300 Georgia dentists (including those affiliated with Kool Smiles and Help A Child Smile) currently accept Medicaid patients at all, and many of these dentists no longer accept new patients.  Barring 100,000 Medicaid patients from seeing their current dentist also will make it extremely difficult, if not impossible, for most of these displaced patients to find a new provider near their home or accessible from public transportation, on which many such patients rely.

**62.**     Notwithstanding its impact, upon information and belief, Defendant Medows has provided approval for the termination of Kool Smiles and Help A Child Smile.

**63.**     Defendant Medows and DCH have, among other things, indicated that they do not believe that their termination will have an impact on the ability of the 100,000 children who comprise the Class in this action to obtain mandated dental care.

**64.**    Defendant Medows has approved an enrollment plan that denies Plaintiffs of access to mandated dental care.  By allowing Co-Defendants to terminate Kool Smiles and Help A Child Smile shortly after the open enrollment period, members of the Class were effectively misled into enrolling with a particular CMO on the assumption that Kool Smiles and Help A Child Smile could be one of their providers.  In reliance upon those enrollment representations, members of the Class selected their providers without knowing that those providers would be terminated shortly after the open enrollment period closed.

**65.**    Upon information and belief, if Kool Smiles is terminated from WellCare and Peach State, more than 73,000 of its 93,000 patients would be without a dentist even if the remaining providers within a four mile radius of each Kool Smiles office were to double their patient load.

**66.**    Upon information and belief, only one out of five Georgia dentists participate in the Medicaid program.  In order to absorb and provide uninterrupted services to the patients that would be displaced by the service contract terminations by WellCare and Peach State, each of the participating dentists would need to see five times as many children as they are now seeing, on a daily basis.

**67.**    Individual Medicaid patients may or may not be able to find alternate dentists to serve their particular needs – dentists that (a) are close enough to their

homes, (b) accept Medicaid, (c) accept patients that do not speak English or that have developmental issues, if such is the case, and (d) have available appointments within the legally defined reasonable period.

## VII. CLASS ACTION ALLEGATIONS

**68.** Plaintiffs bring this action on their own behalf and, pursuant to Rule 23(A) and (B)(2) of the Federal Rules of Civil Procedure, on behalf of all similarly situated individuals.

**69.** The proposed class is defined as all Georgia children under the age of twenty-one who are or will be eligible for Medicaid and/or PeachCare dental benefits and who are or will be seeking oral health services and their parents or natural guardians.

**70.** The requirements of Rule 23(a) are met in that: (i) the Class is so numerous that joinder of all members is impracticable; (ii) all members of the Class share common issues of law and fact, namely, whether Defendants' actions do or will deprive Plaintiffs of adequate dental care, and whether such deprivation violates the federal Medicaid Act; (iii) the claims of the named Plaintiffs are typical of the claims of the Class; and (iv) the named Plaintiffs have retained competent and experienced counsel and will fairly and adequately protect the interests of the Class.

71.     The requirements of Rule 23(b)(2) are met in that Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

72.     Excluded from the Class are Defendants, including any parent, subsidiary, affiliate or controlled person of these entities and their officers, directors, agents, employees and members of their immediate families; and the judicial officers to whom this case is assigned, their staff, and the members of their immediate families.

73.     The identities of the Class and subclass members for purposes of Class notice may be readily obtained from the Defendants' and public records.

74.     In this action, common issues of law and fact relating to the conduct, duty and resulting liability of Defendants predominate over any issues affecting only individual Class members.

75.     The claims of the named Plaintiffs are typical of the claims of the Class in that they and their families have been subjected to the same unlawful behavior of Defendants, giving rise to common legal and equitable claims.

76.     This Court may elect, in its discretion, to maintain these claims as a class action under Rule 23(b)(1), (2) and/or (3) of the Federal Rules of Civil Procedure.

77.     Class certification is appropriate pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure because the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants and/or because adjudications respecting individual members of the Class would, as a practical matter, be dispositive of the interests of the other members or would risk substantially impairing or impeding their ability to protect their interests.

78.     Class certification is also appropriate pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants acted on grounds generally applicable to the Class, making appropriate equitable, injunctive and/or declaratory relief.

79.     Class certification is also appropriate pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because common issues of law and fact predominate over issues involving only individual Class members.

**80.**     There is a continuity of interest in obtaining appropriate equitable relief for the provision of dental services and in obtaining adequate compensation for the damages that Defendants' actions have inflicted on the Class.

**81.**     The named Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class and none have any interests that are adverse to the interests of the Class.

**82.**     A class action approach is superior to other available methods for the fair and efficient adjudication of this dispute because common questions of law and fact predominate over any questions that may affect only individual members of the Class and there would be significant economies to the courts and the parties in litigating the common issues on a class-wide basis rather than in repetitive individual trials. A class approach would consolidate these matters and create fewer management difficulties because it would provide the benefits of unitary adjudication, judicial economy, economies of scale and comprehensive supervision by a single court.

**83.**     Class certification is also appropriate because this Court can designate particular claims or issues for class-wide treatment pursuant to Rule 23(c)(4)(a) and may designate one or more subclasses pursuant to Rule 23(c)(4)(b) of the Federal Rules of Civil Procedure.

## VII. CAUSES OF ACTION

### COUNT ONE

### Declaratory and Injunctive Relief

**84.** Plaintiffs incorporate and re-allege paragraphs 1 through 73, as if fully set forth herein.

**85.** Accordingly, the Plaintiffs, on behalf of themselves and the Class, request the following equitable relief:

(a) A judicial determination and declaration of the rights of the Plaintiffs and the Class and the responsibilities of Defendants with respect to the manner and method by which DCH shall provide Medicaid coverage to Georgia patients in part through contracts with three care management organizations ("CMOs"): AMGP Georgia Managed Care Company Inc. d/b/a Amerigroup Georgia ("Amerigroup") and Defendants WellCare and Peach State.

(b) That Defendants be determined and declared to be financially responsible for the costs and expenses of providing Medicaid coverage to Georgia patients through Kool Smiles and Help A Child Smile.

**86.** Because of the manner in which the Kool Smiles and Help A Child Smile were terminated shortly after the open enrollment period, the Plaintiffs, on behalf of themselves and the Class, request equitable relief as follows:

(a) The contracts with Kool Smiles and Help A Child Smile shall remain in effect and access to those dental care facilities provided until after the close of the next open enrollment period, or

(b) Enrollment be reopened to allow Class Members to enroll in such manner as to effectively receive dental services required by Georgia Healthy Families and the Federal Statutory Scheme.

## COUNT TWO

### Violation of Substantive Due Process Under the Georgia Constitution

**87.** Each and every allegation of the Complaint is incorporated herein as if fully set forth.

**88.** Defendants' termination of the dental service provider contracts without cause of the State's two largest providers of Medicaid dental care to low-income children, and the disruption, delay and/or denial of services that will result, violate their constitutionally protected substantive due process rights conferred upon them under Article I, Section I, Paragraph I of the Georgia State Constitution

including, but not limited to the right not to be deprived access to and receipt of timely dental services.

**89.** As a result of Defendants' arbitrary and capricious deprivation of Plaintiffs' due process rights in absence of any countervailing state interests, Plaintiffs are entitled to recover damages for misconduct by Defendants whose actions and inactions have and will result in:

a.  Plaintiffs' inability to receive dental care with reasonable promptness;

b.  A significant reduction in the amount, duration and scope the dental services available to Plaintiffs compared to those available to other similarly eligible recipients;

c.  Effective elimination Plaintiffs' free choice of providers;

d.  A substantial impairment to Plaintiffs' right to access to dental services of adequate quality;

e.  A significant reduction in the number of providers so that Plaintiffs no longer have access to care and services available under the plan equal to such care and services as arc available to the general population in the geographic area;

f.  A lack of available dental treatment within an outer limit of 6 months after the request for screening services;

g.    A lack of a variety of individual and group providers qualified and willing to provide EPSDT services.

## COUNT THREE

### Violation of Substantive Due Process Under the U.S. Constitution

**90.**    Each and every allegation of the Complaint is incorporated herein as if fully set forth.

**91.**    Defendants' termination of the dental service provider contracts without cause of the State's two largest providers of Medicaid dental care to low-income children, and the disruption, delay and/or denial of services that will result, violate the constitutionally protected substantive due process rights conferred upon them by the Fourteenth Amendment of the United States Constitution, which are asserted pursuant to 42 U.S.C. § 1983, including, but not limited to the right not to be deprived access to and receipt of timely dental services.

**92.**    As a result of Defendants' arbitrary and capricious deprivation of Plaintiffs' due process rights in absence of any countervailing state interests, Plaintiffs are entitled to recover damages for misconduct by Defendants whose actions and inactions have and will result in:

a.    Plaintiffs' inability to receive dental care with reasonable promptness;

b.    A significant reduction in the amount, duration and scope the dental services available to Plaintiffs compared to those available to other similarly eligible recipients;

c.    Effective elimination Plaintiffs' free choice of providers;

d.    A substantial impairment to Plaintiffs' right to access to dental services of adequate quality;

e.    A significant reduction in the number of providers so that Plaintiffs no longer have access to care and services available under the plan equal to such care and services as arc available to the general population in the geographic area;

f.    A lack of available dental treatment within an outer limit of 6 months after the request for screening services;

g.    A lack of a variety of individual and group providers qualified and willing to provide EPSDT services.

## COUNT FOUR

### Violation of Procedural Due Process Under the U.S. Constitution

**93.**    Each and every allegation of the Complaint is incorporated herein as if fully set forth.

**94.** Defendants' actions and inactions in the termination of the dental service provider contracts without cause of the State's two largest providers of Medicaid dental care to low-income children, and the disruption, delay and/or denial of services that will result, deprive the Plaintiffs of federally-created and/or state-created liberty or property rights without due process of law. The federal law entitlements to which low-income children have a constitutionally protected interest arise from the EPSDTP program (discussed above) of the federal Medicaid Act which are asserted pursuant to 42 U.S.C. § 1983.

**95.** As a result of Defendants' arbitrary and capricious deprivation of Plaintiffs' procedural due process rights, Plaintiffs are entitled to recover damages for misconduct by Defendants whose actions and inactions have and will result in:

a. Plaintiffs' inability to receive dental care with reasonable promptness;

b. A significant reduction in the amount, duration and scope the dental services available to Plaintiffs compared to those available to other similarly eligible recipients;

c. Effective elimination Plaintiffs' free choice of providers;

d. A substantial impairment to Plaintiffs' right to access to dental services of adequate quality;

e.    A significant reduction in the number of providers so that Plaintiffs no longer have access to care and services available under the plan equal to such care and services as arc available to the general population in the geographic area;

f.    A lack of available dental treatment within an outer limit of 6 months after the request for screening services;

g.    A lack of a variety of individual and group providers qualified and willing to provide EPSDT services.

## COUNT FIVE

### Violation of 42 U.S.C. § 1396a(a)(8)

**96.**    Each and every allegation of the Complaint is incorporated herein as if fully set forth.

**97.**    Defendants' termination of the dental service provider contracts without cause of the State's two largest providers of Medicaid dental care to low-income children, and the disruption, delay and/or denial of services that will result, violate 42 U.S.C. § 1396a(a)(8), which requires that assistance shall be furnished with reasonable promptness.

**98.**    This violation entitles the Plaintiffs to relief under 42 U.S.C. § 1983. As a result of Defendants' arbitrary and capricious deprivation of Plaintiffs' due

process rights in absence of any countervailing state interests, Plaintiffs are entitled to recover damages for misconduct by Defendants whose actions and inactions have and will result in:

   a.     Plaintiffs' inability to receive dental care with reasonable promptness;

   b.     A significant reduction in the amount, duration and scope the dental services available to Plaintiffs compared to those available to other similarly eligible recipients;

   c.     Effective elimination Plaintiffs' free choice of providers;

   d.     A substantial impairment to Plaintiffs' right to access to dental services of adequate quality;

   e.     A significant reduction in the number of providers so that Plaintiffs no longer have access to care and services available under the plan equal to such care and services as arc available to the general population in the geographic area;

   f.     A lack of available dental treatment within an outer limit of 6 months after the request for screening services;

   g.     A lack of a variety of individual and group providers qualified and willing to provide EPSDT services.

## COUNT SIX

### Violation of 42 U.S.C. § 1396a(a)(10)(B)

**99.** Each and every allegation of the Complaint is incorporated herein as if fully set forth.

**100.** Defendants' termination of the dental service provider contracts without cause of the State's two largest providers of Medicaid dental care to low-income children, and the disruption, delay and/or denial of services that will result, violate the requirements of 42 U.S.C. § 1396a(a)(10)(B) that any PeachCare member receive medical assistance not less in amount, duration and scope than that received by any other similarly-eligible individual.

**101.** This violation entitles the Plaintiffs to relief under 42 U.S.C. § 1983. As a result of Defendants' arbitrary and capricious deprivation of Plaintiffs' due process rights in absence of any countervailing state interests, Plaintiffs are entitled to recover damages for misconduct by Defendants whose actions and inactions have and will result in:

a.     Plaintiffs' inability to receive dental care with reasonable promptness;

b.     A significant reduction in the amount, duration and scope the dental services available to Plaintiffs compared to those available to other similarly eligible recipients;

-41-

c.    Effective elimination Plaintiffs' free choice of providers;

d.    A substantial impairment to Plaintiffs' right to access to dental services of adequate quality;

e.    A significant reduction in the number of providers so that Plaintiffs no longer have access to care and services available under the plan equal to such care and services as arc available to the general population in the geographic area;

f.    A lack of available dental treatment within an outer limit of 6 months after the request for screening services;

g.    A lack of a variety of individual and group providers qualified and willing to provide EPSDT services.

## COUNT SEVEN

### Violation of 42 U.S.C. §§ 1396a(a)(23), 1396n(b) & 1396u-2(a)(1)

**102.**  Each and every allegation of the Complaint is incorporated herein as if fully set forth.

**103.**  Defendants' termination without cause of the State's two largest providers of Medicaid dental care to low-income children, and the disruption delay and/or denial of services that will result, violate 42 U.S.C. §§ 1396a(a)(23), 1396n(b) & 1396u-2(a)(1), which allow a state to limit a patient's choice of

providers in a managed care setting only if such restrictions do not substantially impair access to services.

**104.** This violation entitles the Plaintiffs to relief under 42 U.S.C. § 1983. As a result of Defendants' arbitrary and capricious deprivation of Plaintiffs' due process rights in absence of any countervailing state interests, Plaintiffs are entitled to recover damages for misconduct by Defendants whose actions and inactions have and will result in:

a.      Plaintiffs' inability to receive dental care with reasonable promptness;

b.      A significant reduction in the amount, duration and scope the dental services available to Plaintiffs compared to those available to other similarly eligible recipients;

c.      Effective elimination Plaintiffs' free choice of providers;

d.      A substantial impairment to Plaintiffs' right to access to dental services of adequate quality;

e.      A significant reduction in the number of providers so that Plaintiffs no longer have access to care and services available under the plan equal to such care and services as arc available to the general population in the geographic area;

f.      A lack of available dental treatment within an outer limit of 6 months after the request for screening services;

g.      A lack of a variety of individual and group providers qualified and willing to provide EPSDT services.

## COUNT EIGHT

### Violation of 42 U.S.C. § 1396a(a)(30)

**105.**   Each and every allegation of the Complaint is incorporated herein as if fully set forth.

**106.**   Defendants' termination without cause of the State's two largest providers of Medicaid dental care to low-income children, and the disruption, delay and/or denial of services that will result, violate 42 U.S.C. § 1396a(a)(30), which requires a state to "enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area."

**107.**   This violation entitles the Plaintiffs to relief under 42 U.S.C. § 1983. As a result of Defendants' arbitrary and capricious deprivation of Plaintiffs' due process rights in absence of any countervailing state interests, Plaintiffs are

entitled to recover damages for misconduct by Defendants whose actions and inactions have and will result in:

a.      Plaintiffs' inability to receive dental care with reasonable promptness;

b.      A significant reduction in the amount, duration and scope the dental services available to Plaintiffs compared to those available to other similarly eligible recipients;

c.      Effective elimination Plaintiffs' free choice of providers;

d.      A substantial impairment to Plaintiffs' right to access to dental services of adequate quality;

e.      A significant reduction in the number of providers so that Plaintiffs no longer have access to care and services available under the plan equal to such care and services as arc available to the general population in the geographic area;

f.      A lack of available dental treatment within an outer limit of 6 months after the request for screening services;

g.      A lack of a variety of individual and group providers qualified and willing to provide EPSDT services.

## COUNT NINE

### Violation of 42 U.S.C. § 1396a(a)(43)

**108.** Each and every allegation of the Complaint is incorporated herein as if fully set forth.

**109.** Defendants' termination without cause of the State's two largest providers of Medicaid dental care to low-income children, and the disruption, delay and/or denial of services that will result, violate the EPSDT provisions of the Medicaid Act at 42 U.S.C. § 1396a(a)(43), which requires outreach to, and provision and arrangement for screening and treatment of, qualified Medicaid beneficiaries under age 21.

**110.** This violation entitles the members of the sub-class to relief under 42 U.S.C. § 1983. As a result of Defendants' arbitrary and capricious deprivation of Plaintiffs' due process rights in absence of any countervailing state interests, Plaintiffs are entitled to recover damages for misconduct by Defendants whose actions and inactions have and will result in:

a.      Plaintiffs' inability to receive dental care with reasonable promptness;

b.      A significant reduction in the amount, duration and scope the dental services available to Plaintiffs compared to those available to other similarly eligible recipients;

- 46 -

c.     Effective elimination Plaintiffs' free choice of providers;

d.     A substantial impairment to Plaintiffs' right to access to dental services of adequate quality;

e.     A significant reduction in the number of providers so that Plaintiffs no longer have access to care and services available under the plan equal to such care and services as arc available to the general population in the geographic area;

f.     A lack of available dental treatment within an outer limit of 6 months after the request for screening services;

g.     A lack of a variety of individual and group providers qualified and willing to provide EPSDT services..

## COUNT TEN

### Violation of 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4)(B) & 1396d(r)

**111.**   Each and every allegation of the Complaint is incorporated herein as if fully set forth.

**112.**   Defendants' termination without cause of the State's two largest providers of Medicaid dental care to low-income children, and the disruption, delay and/or denial of services that will result, violate the EPSDT provisions of the Medicaid Act, and the implementing regulations, 42 C.F.R. § 441.00 *et seq.*

which require periodic screening, diagnosis and treatment of eligible beneficiaries under the age of 21. Among other violations, the intervals between dental visits that Plaintiffs under 21 years of age are likely to experience in the wake of Defendants' terminations do not meet the reasonableness standard imposed in the statute.

**113.** This violation entitles the members of the sub-class to relief under 42 U.S.C. § 1983. As a result of Defendants' arbitrary and capricious deprivation of Plaintiffs' due process rights in absence of any countervailing state interests, Plaintiffs are entitled to recover damages for misconduct by Defendants whose actions and inactions have and will result in:

a.      Plaintiffs' inability to receive dental care with reasonable promptness;

b.      A significant reduction in the amount, duration and scope the dental services available to Plaintiffs compared to those available to other similarly eligible recipients;

c.      Effective elimination Plaintiffs' free choice of providers;

d.      A substantial impairment to Plaintiffs' right to access to dental services of adequate quality;

e.      A significant reduction in the number of providers so that Plaintiffs no longer have access to care and services available under the plan equal to

such care and services as arc available to the general population in the geographic area;

f.     A lack of available dental treatment within an outer limit of 6 months after the request for screening services;

g.     A lack of a variety of individual and group providers qualified and willing to provide EPSDT services.

## COUNT ELEVEN

### Breach of Third-Party Beneficiary Rights

**114.**   Each and every allegation of the Complaint is incorporated herein as if fully set forth.

**115.**   The plans submitted by a state in order to receive funding under the Medicaid Act constitutes a binding contract between the state and federal government, which requires the state to provide specified health services to participants in accordance with applicable federal laws and regulations.  As third-party beneficiaries of the contracts between DCH and Defendants WellCare and Peach State and between Defendants WellCare and Peach State and Defendants Avesis and Doral, Plaintiffs are entitled to recover damages under O.C.G.A. § 9-2-20(b) and Georgia common law for misconduct by Defendants whose actions and inactions have and will result in:

a.      Plaintiffs' inability to receive dental care with reasonable promptness;

b.      A significant reduction in the amount, duration and scope the dental services available to Plaintiffs compared to those available to other similarly eligible recipients;

c.      Effective elimination Plaintiffs' free choice of providers;

d.      A substantial impairment to Plaintiffs' right to access to dental services of adequate quality;

e.      A significant reduction in the number of providers so that Plaintiffs no longer have access to care and services available under the plan equal to such care and services as arc available to the general population in the geographic area;

f.      A lack of available dental treatment within an outer limit of 6 months after the request for screening services;

g.      A lack of a variety of individual and group providers qualified and willing to provide EPSDT services.

## COUNT TWELVE

### Negligence: Georgia Common Law

116.    Each and every allegation of the Complaint is incorporated herein as if fully set forth.

117.  Defendants' termination without cause of the State's two largest providers of Medicaid dental care to low-income children, and the disruption, delay and/or denial of services that will result, constitutes negligence and negligence per se as the Plaintiffs are within the class of persons the federal statutes implementing Medicaid were intended to protect – low-income children in need of pediatric dental services.  As a result of the termination of the service contracts Defendants actions and inactions have breached a duty owed to the Plaintiffs.  Therefore, Plaintiffs are entitled to recover damages under Georgia common law for the misconduct by Defendants whose actions and inactions have and will result in:

a.      Plaintiffs' inability to receive dental care with reasonable promptness;

b.      A significant reduction in the amount, duration and scope the dental services available to Plaintiffs compared to those available to other similarly eligible recipients;

c.      Effective elimination Plaintiffs' free choice of providers;

d.      A substantial impairment to Plaintiffs' right to access to dental services of adequate quality;

e.      A significant reduction in the number of providers so that Plaintiffs no longer have access to care and services available under the plan equal to

such care and services as arc available to the general population in the geographic area;

f.      A lack of available dental treatment within an outer limit of 6 months after the request for screening services;

g.      A lack of a variety of individual and group providers qualified and willing to provide EPSDT services.

## COUNT THIRTEEEN

### Nuisance: Georgia Common Law

**118.** Each and every allegation of the Complaint is incorporated herein as if fully set forth.

**119.** Defendants' termination without cause of the State's two largest providers of Medicaid dental care to low-income children, and the disruption, delay and/or denial of services that will result, constitutes a situation in which Defendants have been more than negligent in the operation and carrying out of the Peach State health plan. Defendants' actions have created a continuous, ongoing condition that hurts, inconveniences and/or damages Plaintiffs that impairs their health and well-being. By failing to properly and adequately operate the Peach State health plan, and failing to rectify the problem when brought to their

attention, Defendants have violated the legal duty owed to these low-income children.

**120.** As a result of the termination of the service contracts Defendants' actions and inactions have created and continue to create a public nuisance or in the alternative, a private nuisance that harms Plaintiff Class members. Therefore, Plaintiffs are entitled to recover damages under Georgia common law for the misconduct by Defendants whose actions and inactions have and will result in:

a. Plaintiffs' inability to receive dental care with reasonable promptness;

b. A significant reduction in the amount, duration and scope the dental services available to Plaintiffs compared to those available to other similarly eligible recipients;

c. Effective elimination Plaintiffs' free choice of providers;

d. A substantial impairment to Plaintiffs' right to access to dental services of adequate quality;

e. A significant reduction in the number of providers so that Plaintiffs no longer have access to care and services available under the plan equal to such care and services as arc available to the general population in the geographic area;

f.     A lack of available dental treatment within an outer limit of 6 months

after the request for screening services;

g.     A lack of a variety of individual and group providers qualified and

willing to provide EPSDT services.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully pray that this court:

1.     Certify the action as a class action, pursuant to Fed. R. Civ. P.

23(b)(2);

2.     Declare that the policies and methods of administration used by

Defendants in providing dental services to PeachCare members under 21

years of age violate the provisions of the EPSDT program, including 42

U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(43), 1396d(a)(4)(B) and 1396d(r);

3.     Issue an injunction requiring that Defendants take such

measures as are necessary to maintain an adequate number and geographic

distribution of qualified dental providers so as to make available prompt and

adequate dental services for Plaintiffs and all similarly situated PeachCare

members, improve administration of the PeachCare dental program, and

otherwise bring the statewide dental program into compliance with

applicable law;

4.      Issue an injunction restraining Defendants from terminating either Kool Smiles or Help A Child Smile until Defendants have demonstrated to the satisfaction of this Court that Defendants can take such actions and still comply with all statutory and regulatory requirements for administration and operation of Medicaid dental programs;

5.      Award Plaintiffs damages in an amount to be proven at trial;

6.      Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and their costs pursuant to O.C.G.A. § 9-4-9 ; and

7.      Grant such other and further relief as this Court may deem just, necessary and proper to protect the Plaintiffs and Class members from further harm by Defendants.

This 22nd day of August, 2007..

Respectfully submitted,

GOODMAN MCGUFFEY LINDSEY & JOHNSON, LLP
Attorneys for Plaintiffs

BY: _____

EDWARD H. LINDSEY, JR.
GA State Bar No.:  453075
ROBERT M. DARROCH
GA State Bar No.:  205490
DOROTHY ANNE JARRELL
GA State Bar No.:  587099